UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| WILLIAM MERRILL,<br>    Plaintiff, | |
|---|---|
| v. | |
| HARTFORD LIFE & ACCIDENT<br>INSURANCE COMPANY,<br>    Defendant. | Civil Action No.<br>3:03cv1510 (SRU) |

## MEMORANDUM OF DECISION

William Merrill brings this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") against his long-term disability insurer, Hartford Life & Accident Insurance Company ("Hartford"), for its failure to pay long-term disability benefits. He argues that Hartford improperly denied his claim, and that I should review Hartford's decision *de novo*. Hartford, by contrast, argues that its decision to deny Merrill's benefits was reasonable and that I should review its decision under an arbitrary and capricious standard. For reasons that follow, I remand the case to Hartford with instructions to reconsider its decision to deny Merrill's benefits, and to conduct a full and fair review consistent with this opinion.

### I.     Background

Merrill was an employee of Quinnipiac University for thirty years. During that time, he held several positions within the physical education and athletic departments. When he stopped working, Merrill was Quinnipiac's Assistant Athletic Director of Intramurals. In that position, Merrill was required to:

> hire, train and supervise intramural employees, prepare budgets, develop & publish schedules, coordinate supervision of intramural activities & set up of activities, develop & implement policies & procedures, interpret policy & rules, coordinate purchase & control of equipment, expand the intramural program & conduct on-going long range planning, evaluate intramural

> performances, ensure a safe environment utilizing risk management procedures, coordinate facility scheduling, inform & advise Athletic Director/Associate Athletic Director of problems encountered, market the intramural program, submit payroll of student employees, supervise various assistants, and coordinate & supervise intramural board meetings.

Def. Ex. B at 68. Quinnipiac's assistant athletic director is generally required to "sit, stand, walk and drive for two hours at each activity in an eight hour day, lift/carry a maximum of 100 pounds occasionally," and to "stoop, crouch, reach handle, finger, feel occasionally." *Id*. Although there is some discrepancy over the physical demands of his job, Quinnipiac University and the United States Department of Labor's Dictionary of Occupational Titles classifies Merrill's position as sedentary. *Id*. at 88.

Quinnipiac's plan defines a disability as a condition, such as "accidental bodily injury, sickness, mental illness, substance abuse, or pregnancy," that prevents an employee from "performing one or more of the Essential Duties" of his occupation, and as a result, the employee's current monthly earnings are no more than eighty percent of his "Indexed Pre-disability Earnings." Def. Ex. A at 37. The employee must further be "prevented from performing one or more of the Essential Duties of Any Occupation." Quinnipiac's plan defines "essential duty" as a duty that: "(1) is substantial, not incidental; (2) is fundamental or inherent to the occupation; and (3) can not be reasonably omitted or changed." *Id*. "To be at work for the number of hours in your regularly scheduled workweek is also an essential duty." *Id*. Under the plan, benefits become payable if the employee becomes disabled while insured under the plan and the employee submits proof of loss "satisfactory" to Hartford. *Id*. at 42. Finally, the plan reserves to Hartford "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy." *Id*. at 50.

On November 30, 2001, Merrill stopped working due to a painful back condition. He repeatedly sought the assistance of his treating physician, Dr. Phillip Dickey. In his reports, Dickey noted that Merrill's symptoms had "been worsening as a result of several injuries he achieved at work during the spring of 1999, a fall in 1999, as well as in the spring a fall again in 2000," and that Merrill complained bitterly of back pain upon walking even fifty or sixty yards, had numbness in the legs, and intermittent left foot drop. Def. Ex. B at 157. Dickey ultimately diagnosed Merrill with Lumbar Spine Disease and noted that Merrill had never fully recovered from a lumbar laminectomy on April 12, 1993. In a neurosurgical follow-up to a November 13, 2001 examination of Merrill, Dickey concluded that Merrill:

> is essentially unable to complete even the lightest of activities at work and at home. . . . It is my opinion that William is not capable of any gainful employment as a result of his lumbar spine disease. He has had repeated episodes of trauma at work which have culminated in this state where he is unable to perform all types of gainful employment. I think he should stop work at this time. *Should he continue to work, I fear that his spinal condition will deteriorate much more rapidly and he might eventually become bed bound*.

*Id*. (emphasis added). Dickey again examined Merrill on May 8, 2002, and similarly commented that Merrill

> continues to have almost constant numbness in the legs and tells me he can perform essentially no significant physical activity. . . . Merrill continues to be incapable of performing any type of work activities. . . . Today, his MRI scan reveals severe spinal stenosis and suggests progressive worsening over the years consistent with repetitive injuries at work . . . . In summary, Mr. Merrill had initial injuries to his low back in the 1980s for which I treated him surgically in 1993. He has had a series of further work injuries which have culminated in current picture such that he has severe spinal stenosis and he is unable to work.

*Id*. at 150.

On December 3, 2001 Merrill applied to Hartford for long-term disability benefits, and

Hartford denied Merrill's claim. Def. Ex. B. At 66. Hartford did not have a doctor examine Merrill, but instead based its decision to deny the claim on its own evaluation of Dickey's records, which included office notes, Dickey's statements, medical records, and an MRI of Merrill's back. Hartford denied Merrill's claim because it concluded that Merrill was not "disabled," as that term is defined in Merrill's plan. *Id*. at 69. Hartford's reasoning for deeming Merrill not disabled can be distilled to one essential contention, namely, that Dickey has not recommended, nor has Merrill received, ongoing treatment for his back condition. *Id*.

Merrill then appealed Hartford's initial decision to deny him benefits, and Hartford subsequently denied Merrill's appeal, again determining that Merrill was not "disabled." Robert Dombrowski, Jr., Hartford's appeals specialist, wrote Merrill a letter reiterating the points that the original denial raised. *Id*. at 87-90. Dombrowski's letter also raised a few additional points. First, it explained that Merrill's policy draws a significant distinction between an occupation and a job. *Id*. at 88. Specifically, the policy provides a benefit for a beneficiary if he is unable to perform the essential duties of his occupation, but does not necessarily provide any benefit to the beneficiary if he is unable to perform the essential duties of his job. Therefore, although Quinnipiac may or may not have required Merrill to perform certain physical tasks as part of his "job," Quinnipiac and the U.S. Department of Labor classify Merrill's "occupation" as sedentary and administrative in nature. Second, Dombrowski classified as "preventative" Dickey's recommendation that Merrill stop working because, if Merrill continued to work, his condition would deteriorate and he may become permanently bed bound. *Id*. at 89. Third, Dombrowski pointed out that Merrill continued to work for a short period of time after Dickey's diagnoses. *Id*.

Finally, Hartford hired a physician, Dr. Jefferey Young, to analyze all the materials Merrill submitted to support his claim. Young, however, never spoke directly to Merrill's treating physician, nor did he personally examine Merrill. *Id*. Young did not disagree with Dickey's observations, but only disagreed with Dickey's ultimate recommendation. Young concluded that although Merrill suffered from "deterioration of the lumbar spine and ambulatory function," there was "no evidence that upper body function has been affected, that cognition has been affected and that sitting tolerance has been affected, or that Mr. Merrill could not operate a wheelchair." *Id*. at 95. He continued that:

> The form that was filled out in December of 2001 indicates pain with sitting beyond 30 minutes, but there is no evidence to support this in the records that I have available for my review. There is no indication as to whether or not decompressive spine surgery is to be considered in the future, as well. . . . It is my opinion that the available medical records do not provide information that would contradict Mr. Merrill's ability to perform full time sedentary work at a seated level.

*Id*.

Merrill now appeals Hartford's decision to deny his claim pursuant to ERISA. He claims that Hartford improperly denied his claim, and that Hartford's status as both decision-maker and plan fiduciary influenced the reasonableness of its decision.

## II. Discussion

The standard of review is central to this dispute. Where, as here, an ERISA-regulated benefit plan "confers upon a plan administrator the discretionary authority to determine eligibility, we will not disturb the administrator's ultimate conclusion unless it is 'arbitrary and capricious.'" *Pagan v. Nynex Pension Plan*, 52 F.3d 438, 441 (2d Cir. 1995). An exception arises, however, when a plan administrator acts under a conflict of interest that actually

influenced the reasonableness of the insurer's decision to deny benefits. *Short v. Unum Life Ins. Co. of America*, 2003 WL 22937720, *5 (D. Conn. 2003). In such a case, *de novo* review is appropriate. *Pulvers*, 210 F.3d, at 92.

A. <u>Structural Conflict</u>

In this case, it is undisputed that Hartford acted under a structural conflict. A conflict necessarily exists when the party that evaluates a beneficiary's claim is also the party ultimately responsible for paying the benefits of the plan. *Whitney v. Empire Blue Cross and Blue Shield*, 106 F.3d 475, 477 (2d Cir. 1997). Hartford was both the plan administrator and the plan fiduciary, and was therefore responsible for both evaluating Merrill's claim and paying the benefits of the plan.

B. <u>Reasonableness of Hartford's Decision</u>

Merrill argues that Hartford's decision to deny his claim was unreasonable because Young, Hartford's independent physician, failed to personally examine Merrill, and because Young failed to consult with Dickey, Merrill's treating physician. Merrill concludes that these facts, when considered in light of Hartford's interest in maximizing profits, prove that Hartford's structural conflict improperly influenced their decision to deny benefits.

In considering the reasonableness of Hartford's decision, it is important to be mindful of Hartford's conflict of interest in its roles as both claim administrator and benefit provider, as well as the conflict of interest of Hartford's consulting physicians, whom Hartford retained and paid to review Merrill's file. *See Platt v. Walgreen Income Protection Plan*, 455 F. Supp. 2d 734, 744 (M.D. Tenn. 2006).

An insurance company's failure to physically examine the claimant, or to confer with the

claimant's treating physician, is not, by itself, sufficient evidence to prove that the structural conflict influenced the insurer's decision to deny benefits. *See, e.g., Flanagan v. First Unum Life Ins. Co.*, 170 Fed. Appx. 182, 184 (2d Cir. 2006); *Kocsis v. Std. Ins. Co.*, 142 F. Supp. 2d 241, 253-54 (D. Conn. 2001). Indeed, courts have held that nothing in ERISA "suggests that plan administrators must accord special deference to the opinions of treating physicians. Nor does the Act impose a heightened burden of explanation on administrators when they reject a treating physician's opinion." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831 (2003). Nevertheless, when a plan administrator categorically rejects a treating physician's recommendations, it must provide valid reasons for doing so. *See id*. at 834 ("Plan administrators . . . may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician.").

In this case, Hartford has failed to present sufficient evidence to support its decision to deny Merrill's disability claim. As an initial matter, Young's opinions, upon which Hartford heavily relies, are not significantly probative. First, Young failed to personally examine Merrill, and his failure to consult with Merrill's physician, although not dispositive, is probative of the reasonableness of Hartford's decision to deny his claim. If Young had personally examined Merrill, or consulted with Merrill's physician, his opinions would have been more meaningful. Second, Young's opinion itself was reserved and qualified at best, and implied that Young himself lacked the information necessary to render his conclusions, whereas Dickey's opinion, based on his personal observations, was strong and unequivocal. Young concluded that "the available medical records do not provide information that would contradict Mr. Merrill's ability to perform full time sedentary work at a seated level." Def. Ex. B at 95. By contrast, Dickey

concluded that Merrill "should stop work at this time. Should he continue to work, I fear that his spinal condition will deteriorate much more rapidly and he might eventually become bed bound." *Id*. at 157. Young simply points out the perceived absence of evidence in the "available" records, and that the existing records neither support, nor contradict Dickey's observations. Young never presents affirmative evidence that Merrill is not disabled, or that Merrill's condition is treatable, or that Merrill can perform the functions of his occupation. Finally, Young failed to address Merrill's complaints of severe pain. *See Mikrut v. UNUM Life Insurance Company of America*, 2006 U.S. Dist. LEXIS 92265 (D. Conn. 2006). Young thus "arbitrarily refuse[d]" to credit Merrill's reliable evidence, *Nord*, 538 U.S. at 834, and his opinion is thus insufficient, by itself, to support Hartford's denial of Merrill's claim.

In addition to Young's opinion, the remainder of Hartford's explanations for denying Merrill's claims are likewise insufficient to support its decision. Hartford makes much of the fact that Merrill is not seeking ongoing treatment for his back condition. The failure to seek ongoing treatment for an ailment, however, does not necessarily mean that the ailment is not disabling. It may mean that the ailment is simply not treatable. For example, a paralytic might not seek ongoing treatment for his paralysis, and yet the paralytic's failure to seek ongoing treatment does not prove that the paralytic is not disabled. Merrill's condition very well may be treatable through surgery or therapy, but Hartford has failed to present any evidence to establish that Merrill's condition is, in fact, treatable.

Hartford also argues that Dickey's recommendation was preventative in nature. Dickey's recommendation was indeed preventative to a degree: "[s]hould [Merrill] continue to work . . . his spinal condition will deteriorate much more rapidly and he might eventually become bed

bound." Def. Ex. B. at 157. There would not seem to be a meaningful distinction, however, between an employee whose condition physically prevents him from performing the duties of his occupation and an employee whose condition is so fragile that continued performance of the duties of his occupation will imminently cripple the employee.

Hartford also reasoned that Merrill continued to work for roughly two weeks after Dickey diagnosed him with his condition, which shows that Merrill is not disabled. Performing one's occupation for two weeks, however, is quite a different proposition from performing one's occupation indefinitely. Moreover, there is nothing inconsistent about being "disabled," as that term is defined in Merrill's plan, and being able to perform some of the duties of one's occupation for a short period of time. An individual is "disabled" under Merrill's plan if he is prevented "from performing *one or more* of the essential duties of" the employee's occupation. It appears as though Merrill made a good-faith effort to work through his pain, but was ultimately unsuccessful. He should not be punished for his honest attempt to continue working with a serious affliction.

Finally, Hartford argues that, although prevented from performing the duties of his particular job at Quinnipiac, Merrill was still able to perform the duties of his occupation, which the Department of Labor classifies as sedentary. Again, however, Hartford fails to present any affirmative evidence that Merrill is capable of performing the duties of his occupation, but only asserts that there is a lack of evidence to either support, or contradict, Dickey's findings. By contrast Merrill has presented some reliable evidence, in the form of Dickey's observations and opinions after personal examinations, that he is not capable of performing the duties of his occupation. Hartford cannot contradict Dickey's diagnosis by conclusory statements, nor can it

rest on the conclusory statements of its hired medical expert. *See Nord*, 538 U.S. at 834 ("Plan administrators . . . may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician.").

Because Hartford operated under a clear structural conflict, and because the conflict affected the reasonableness of Hartford's decision to deny Merrill's claim for long-term disability benefits, its denial of Merrill's claim is subject to *de novo* review.

Nevertheless, upon a *de novo* review of Hartford's decision to deny Merrill's claim, I cannot determine whether Hartford's decision was ultimately incorrect. Although, for reasons previously stated, Hartford's decision to deny Merrill's claim was unreasonable based upon the current record, Hartford may be able to establish, upon the presentation of further medical evidence, that it properly denied the claim. It is thus appropriate to grant Merrill's request for relief only in part. I remand the case to Hartford with instructions to reconsider its decision, and to conduct a full and fair review of Merrill's claim in light of this opinion. *See, e.g. Crocco v. Xerox Corp.*, 137 F.3d 105 (2d Cir. 1998) (upholding a district court's decision to remand a plan's decision to deny benefits to the administrator because the administrator failed to provide a full and fair review of the claim); *Macleod v. The Procter & Gamble Disability Benefit Plan*, 460 F. Supp. 2d 340 (D. Conn. 2006) (remanding a plan's decision to deny disability benefits for further review).

In its reevaluation, Hartford may find it useful to examine Merrill and/or to consult with Merrill's treating physician. If Hartford again denies Merrill's claims, it must present affirmative medical evidence that Merrill either does not suffer from the condition from which he claims to suffer, that Merrill's condition is treatable, or that Merrill can perform the duties of his

occupation in his current state.

**III.     Conclusion**

Merrill's request for relief is **GRANTED in part and DENIED in part**.  I hereby remand the case to Hartford for reconsideration of its decision to deny Merrill's claim for long-term disability benefits.  Hartford shall have 60 days to investigate and rule on Merrill's claim.

The Clerk shall close the file.

It is so ordered.

Dated at Bridgeport, Connecticut, this 31st day of August 2007.

      /s/ Stefan R. Underhill
      Stefan R. Underhill
      United States District Judge